UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-553-GWU


RAY JONES,                                                        PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.


**INTRODUCTION**

Ray Jones brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

06-553  Jones

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

06-553  Jones

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

3

06-553  Jones

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

06-553  Jones

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

06-553  Jones

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

6

such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Jones, a 37 year-old former construction worker with a high school education, suffered from impairments related to discogenic and degenerative disorders of the back, being status post gunshot wound to the left thigh, a pain disorder, and borderline intelligence.  (Tr. 16, 21).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 24-25).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 25).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 23-24).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Katherine Bradford included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to more than occasionally balance, crouch, crawl, or climb stairs; (2) an inability to ever climb ladders, ropes, or scaffolds; and a (3) a limitation to simple jobs without public contact.  (Tr. 507).  In response, Bradford identified a significant number of jobs in the national economy which could be performed.  (Tr. 507-508).  The ALJ then inquired concerning the effect of such mental limitations as a "moderately limited" ability to carry out detailed instructions, deal with the public, respond appropriately to work setting changes, and completing a normal work day or work week without interruption from psychologically-based symptoms and to work at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 508).  The witness testified that all of the previously cited jobs could still be done.  (Id.).  Therefore, assuming that the vocational factors considered by Bradford fairly characterized Jones' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  The question was compatible with the opinion of Dr. Rami Kahwash, an examining consultant, who found no physical evidence for significant restriction with regard to stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or traveling.  (Tr. 253).

8

Dr. Brett Scott treated the plaintiff on one occasion and thought that he would soon improve to return to normal activities.  (Tr. 167).  Dr. David Swan, a non-examining medical reviewer, opined that the claimant's physical problems were "less than severe."  (Tr. 255).  More severe physical limitations than those found by the ALJ were not reported by such treating and examining sources as the staff at the Pineville Community Hospital (Tr. 141-143, 168-175, 218-225, 245-249, 257-264, 375-391), Dr. Ashok Patel (Tr. 159), Dr. Amr El-Naggar (Tr. 160-164), Dr. Andrew Kovacs (Tr. 176-179), and the staff at the University of Tennessee Medical Center (Tr. 334-352).   These reports provide substantial evidence to support the administrative decision.

Dr. Talmadge Hays, a treating physician, identified extremely severe physical restrictions which would preclude performance of even sedentary level work.  (Tr. 404).  The ALJ rejected Dr. Hays' opinion as binding because he did not believe that it was supported by sufficient objective medical data.  (Tr. 20).  This action would appear appropriate.   The doctor did not cite what clinical data supported such severe limitations.  X-rays of the plaintiff's lumbosacral and cervical spines were unremarkable.  (Tr. 143). An MRI Scan of the cervical spine revealed a mild bulge at C6-C7 with disc narrowing at C5-C6.  (Tr. 159).  An MRI of the lumbosacral spine revealed degeneration at L3-L3 and L5-S1 with a mild protrusion at L5-S1.  (Id.).  Dr. El-Naggar noted that the lumbar MRI did not show any disc herniation or nerve

9

06-553  Jones

root compression.  (Tr. 162).  Dr. Kahwash found no focal motor or cerebellar abnormalities as well as no sensory changes.  (Tr. 252-253).  Under these circumstances, the ALJ properly rejected the opinion.

The ALJ also dealt properly with the evidence of record relating to Jones's mental status.  Psychologist Kenneth Starkey examined the plaintiff and opined that he would have "moderate" limitations with regard to social and occupational functioning.  (Tr. 192).  The mental factors presented to Bradford appear compatible with this opinion.  Starkey also stated that the claimant would need three to six months of psychological therapy in order to be ready for vocational rehabilitation or placement.  (Id.).  However, the examiner appears to have relied on physical problems beyond his expertise in reaching this conclusion.  (Id.).  The "moderate" mental limitations indicated do not appear disabling.  The mental limitations identified by Psychologists Jay Athy (Tr. 199-200) and Jane Brake (Tr. 240-241), the non-examining medical reviewers, were presented to the vocational expert who noted that a significant number of jobs could still be performed despite these restrictions.  These reports provide substantial evidence to support the administrative decision.

Jones was hospitalized under the care of Dr. Chintamani Vora at the Baptist Regional Medical Center on June 12, 2004.  The plaintiff was placed on a suicide watch after he was found to have inflicted multiple knife wounds to his forearms.

10

06-553  Jones

(Tr. 266-267).  Dr. Vora diagnosed a major depression and possible psychosis and organic mood disorder.  (Tr. 267).  The claimant's <u>current</u> Global Assessment of Functioning (GAF) was rated at 30 (Tr. 267), suggesting the existence of "serious" psychological impairment according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  Jones asserts that this report supports his disability claim.  However, Dr. Vora did not impose any long-term mental restrictions.  The GAF was current only.  On June 9, 2004, only three days earlier, Starkey saw the plaintiff and rated his GAF at 58, suggesting the existence of only "moderate" limitations consistent with the ALJ's findings.  (Tr. 191).  The claimant indicated that on the day his admission, he had consumed six to seven beers.  (Tr. 266).  This exacerbation of the plaintiff's mental problems could have been related to alcohol consumption.  Public Law 104-121 prohibits the award of Social Security Benefits when alcohol or drug abuse is a contributing material factor.  Therefore, under these circumstances, the Court finds not error.

Jones argues that the ALJ erred in concluding that he did not meet the requirements of Section 12.05C of the Listing of Impairments concerning mental impairments.  This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

11

06-553  Jones

20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05C.  The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05. The plaintiff notes that school records from Lone Jack High School reveal that he obtained a Full Scale IQ of 70, a Verbal IQ score of 66 and a Performance IQ score of 78.  (Tr. 140).  Two of these three scores were within Listing range and these scores were considered valid. However, the Court notes that this testing was performed in 1983, at a time when the plaintiff was 15 years-old.  The administrative regulations indicate that IQ testing administered between the ages of 7 and 16 is only considered to be valid for a maximum of 2 years when the test scores are over 40.  20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.00D(10).  Therefore, this score would not be considered to be valid for the time period pertinent to this appeal.  The record contains no other IQ testing results.  Therefore, the claimant has failed to produce a "valid" IQ score within the applicable range and, so, does not meet the requirements of 12.05C.

Finally, Jones argues that the ALJ erred in failing to include a limitation relating to his general learning ability.  The plaintiff asserts that as a person of borderline intelligence, he is in the bottom ten percent of the population in

12

06-553  Jones

intelligence and that this factor should have been presented to the vocational expert.  Bradford testified that she had reviewed the record and heard the claimant's hearing testimony.  (Tr. 506).  Thus, she would have been well-acquainted with his intellectual status.  Jones has not presented any evidence that suggests that the specific jobs cited by the vocational expert could not be performed by one in the bottom ten percent of the population in intellectual functioning.  Therefore, the Court must reject his argument.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 12th day of October, 2007.


**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**